UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELWYN<br>111 Elwyn Road<br>Elwyn, PA 19036<br><br>    Plaintiff,<br><br>v.<br><br>MIDWEST EMPLOYERS CASUALTY CO.<br>14755 North Outer Forty Drive, Suite 300<br>Chesterfield, MO 63017<br><br>    Defendant. | :<br>:<br>:<br>:<br>:<br>: Civil Action No. 08CV1396<br>:<br>:<br>:<br>: **JURY TRIAL DEMANDED**<br>:<br>:<br>:<br>: |

## COMPLAINT

Plaintiff Elwyn, formerly known as Elwyn, Inc. ("Elwyn"), by and through its undersigned counsel, brings this Complaint against defendant Midwest Employers Casualty Company ("MECC"), and in support thereof alleges as follows:

### I. THE PARTIES

1. Plaintiff Elwyn is a non-profit corporation organized and existing under the laws of Pennsylvania with its principal place of business at 111 Elwyn Road, Elwyn, Pennsylvania 19036.

2. Defendant Midwest Employers Casualty Company ("MECC") is a corporation organized and existing under the laws of Delaware, with its principal places of business in Chesterfield, Missouri.

### II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds

4256086

$75,000.00, exclusive of interest and costs.

4. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(a) because a substantial number of events or omissions giving rise to the claims occurred here.

5. This action for declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

6. As is shown below, an actual, immediate and justiciable controversy exists between the parties named herein with regard to the coverage provided under the terms of the policy of insurance at issue here. A declaratory judgment by this Court will affect the rights and interests of the parties. MECC has erroneously applied a penalty provision to Elwyn's claim for reimbursement and has unilaterally changed the way it calculates reimbursement due under the MECC insurance policy, assuming a penalty provision applies. Accordingly, plaintiff Elwyn seeks relief, *inter alia*, in the nature of a declaration of MECC's obligation to reimburse Elwyn under the MECC insurance policy.

### III. THE NATURE OF THE ACTION

7. Elwyn purchased insurance from MECC, which issued Midwest Employers Casualty Company Excess Insurance Policy for Self-Insurer of Workers Compensation and Employers Liability Policy No. 1623-S0-PA (the "MECC Policy"). A copy of the MECC Policy is attached hereto as Exhibit "A".

8. Elwyn's claim for reimbursement from MECC relates to a claim by Michael Bradley, who was injured in April 1994 (the "Bradley claim"). Mr. Bradley initially received workers compensation payments within Elwyn's $300,000 self-insured retention ("SIR").

9. Mr. Bradley's claim for indemnity was resolved through commutation without

requiring any payment from MECC. The medical portion of Mr. Bradley's claim went dormant, and the claim was closed.

10. Upon information and belief, Elwyn's prior third-party administrator ("TPA") Colonial Risk Management ("Colonial") provided timely notice of this claim to MECC.

11. Several years later, in December 1998, Mr. Bradley reported a "flare up", and Elwyn's new third-party administrator submitted a supplemental report to MECC in April 2000.

12. MECC wrongly claims that the April 2000 submission was the first notice it received of the Bradley claim, and improperly imposed a 40% penalty to Elwyn's claim for reimbursement.

13. While the MECC Policy contains a penalty provision, the MECC Policy does not contain a formula or otherwise define how the penalty is to be applied.

14. Over the course of several years, MECC calculated the reimbursement due Elwyn by first calculating the Excess Due by taking the Total Payments Made by Elwyn and subtracting the $300,000 SIR and any Previous Reimbursements to Elwyn. MECC then applied the 40% penalty to the Excess Due.

15. In the fall of 2003, MECC processed Elwyn's claim for reimbursement on the Bradley claim without applying any penalty to the request.

16. When MECC next processed a request for reimbursement on the Bradley claim in late April 2004, MECC applied a penalty. Thereafter, MECC applied a penalty to Elwyn's requests for reimbursement for this claim.

17. In October 2004, MECC used a different formula to calculate the amount to be reimbursed to Elwyn ("the October 2004 formula").

18. MECC realized the October 2004 calculation was in error, revised the calculation

N/A

N/A

N/A

and sent the payment due Elwyn under the formula set forth in paragraph 14, above.

19. Thereafter, MECC returned to calculating the reimbursement due Elwyn using the formula set forth in paragraph 14, above.

20. In early 2007, Elwyn submitted another claim for reimbursement. At that time, Elwyn was due $239,051.63 under the formula set forth in paragraph 14, above.

21. Instead of following the formula used up to that point, MECC unilaterally decided to use the October 2004 formula it previously acknowledged was in error. Using the October 2004 formula it knows is wrong, MECC refuses to reimburse Elwyn and brazenly claims that Elwyn has been overpaid $29,026.79.

## IV. CAUSES OF ACTION

### COUNT I

### FOR A DECLARATION OF RIGHTS
### (THE PENALTY PROVISION)

22. The allegations of Paragraphs 1 through 21 of this Complaint are incorporated herein by reference as though fully set forth.

23. MECC has wrongly applied a 40% penalty provision to the Bradley claim.

24. Upon information and belief, Elwyn's prior TPA Colonial provided timely notice of the Bradley claim to MECC, although MECC has refused to acknowledge the earlier notice.

25. The notice provisions in the MECC Policy are ambiguous, and MECC has taken different and inconsistent positions on what notice is required and when it is required.

26. Even assuming *arguendo* that Colonial did not provide notice, MECC would not be entitled to invoke the late notice "penalty" because, *inter alia*, the penalty provision does not apply to the kind of loss at issue in this case, MECC has not been prejudiced by the notice it received in this case and the penalty provision is unenforceable.

27. An actual, immediate and justiciable controversy exists between Elwyn and MECC concerning whether a penalty provision should apply to reimbursement for the Bradley claim.

28. Elwyn is in need of the Court's assistance in resolving the parties' differing interpretations of the notice and penalty provisions in the MECC Policy upon which MECC relies in calculating the reimbursement due Elwyn.

WHEREFORE, plaintiff Elwyn respectfully requests that this Court issue a declaration that, under the terms of the policy at issue, Midwest Employers Casualty Company:

(a) has a duty to reimburse Elwyn for the Bradley claim without any application of a penalty provision;

(b) has an obligation to reimburse Elwyn for amounts Midwest Employers Casualty Company has wrongfully withheld based on a penalty provision;

(c) has a duty to pay interest at the legal rate of 6% per annum for the amounts wrongfully withheld;

(d) has a duty to reimburse Elwyn for attorney's fees, expenses and costs that it has incurred and will incur in bringing this insurance coverage action; and

(e) such other relief as the Court deems appropriate.

## COUNT II

### FOR A DECLARATION OF RIGHTS
### (FORMULA FOR CALCULATING REIMBURSEMENT)

29. The allegations of Paragraphs 1 through 28 of this Complaint are incorporated herein by reference as though fully set forth.

30. An actual, immediate and justiciable controversy exists between Elwyn and MECC concerning the calculation of reimbursements due Elwyn under the MECC Policy.

31. Even assuming *arguendo* that a penalty provision applies to the Bradley claim, MECC has unilaterally and wrongfully changed the method it uses to calculate reimbursement due under the MECC Policy. MECC improperly embraces this change to justify its failure to reimburse Elwyn several hundred thousand dollars.

32. Elwyn is in need of the Court's assistance in resolving the parties's differing interpretations of the method for calculating reimbursements due under the MECC Policy.

WHEREFORE, plaintiff Elwyn respectfully requests that this Court issue declarations that under the terms of the policies at issue defendant Midwest Employers Casualty Company:

(a) has a duty, in the event a penalty provision applies to the Bradley claim, to calculate reimbursements due under the MECC Policy using the formula set forth in paragraph 14, above;

(b) has a duty to reimburse Elwyn for amounts currently due;

(c) has an obligation to pay interest at the legal rate of 6% per annum for amounts wrongfully withheld by MECC;

(d) has a duty to reimburse Elwyn for attorney's fees, expenses and costs that it has incurred and will incur in bringing this insurance coverage action; and

(e) such other relief as the Court deems appropriate.

## COUNT III

### FOR DAMAGES RESULTING FROM DEFENDANT'S BREACH OF CONTRACT (PENALTY PROVISION)

33. The allegations of Paragraphs 1 through 32 of this Complaint are incorporated herein by reference as though fully set forth.

34. As set forth above, MECC has wrongfully applied a penalty provision while calculating reimbursement due to Elwyn for the Bradley claim.

35. MECC has breached and continues to breach its obligation to Elwyn by applying a penalty provision to Elwyn's request for reimbursement for the Bradley claim.

36. As a result of these breaches, MECC has failed to reimburse Elwyn several hundred thousand dollars.

WHEREFORE, plaintiff Elwyn respectfully requests that this Court enter judgment in its favor and against defendant Midwest Employers Casualty Company in the amount of:

 (a) the amounts wrongfully withheld from Elwyn based on application of the penalty provision in the MECC Policy;

 (b) interest at the legal rate of 6% per annum for amounts wrongfully withheld by MECC;

 (c) attorney's fees, expenses and costs Elwyn has incurred in bringing this insurance coverage action; and

 (d) such other relief as the Court deems appropriate.

## COUNT IV

### FOR DAMAGES RESULTING FROM DEFENDANT'S BREACH OF CONTRACT (CALCULATION OF REIMBURSEMENT DUE)

37. The allegations of Paragraphs 1 through 36 of this Complaint are incorporated herein by reference as though fully set forth.

38. Assuming *arguendo* that a penalty provision applies to Elwyn's request for reimbursement, MECC has unilaterally changed the method of calculating reimbursement due under the MECC Policy.

39. MECC has breached and continues to breach its obligation to Elwyn by abandoning the method of calculating reimbursement it has used in the past and unilaterally substituting a new method of calculating reimbursement owed to Elwyn.

40. As a result of these breaches, MECC has failed to reimburse Elwyn several hundred thousand dollars.

WHEREFORE, plaintiff Elwyn respectfully requests that this Court enter judgment in its favor and against defendant Midwest Employers Casualty Company in the amount of:

(a) the amounts wrongfully withheld from Elwyn based on application of a new method of calculating reimbursements under the MECC Policy;

(b) interest at the legal rate of 6% per annum for amounts wrongfully withheld by MECC;

(c) attorney's fees, expenses and costs Elwyn has incurred in bringing this insurance coverage action; and

(d) such other relief as the Court deems appropriate.

## COUNT V

## FOR SPECIAL DAMAGES PURSUANT TO 42 PA.C.S.A. § 8371

41. The allegations of Paragraphs 1 through 40 of this Complaint are incorporated herein by reference as though fully set forth.

42. Pursuant to 42 Pa. C.S.A. § 8371, an insurer acts in bad faith if it denies coverage to its insured without a reasonable basis and knowingly or recklessly disregards its lack of a reasonable basis.

43. MECC has acted in bad faith by, *inter alia*, knowingly and recklessly applying a penalty provision to the Bradley claim and by unilaterally changing the method of calculating reimbursements due under the MECC Policy.

44. In evaluating its obligations, MECC has not been honest, intelligent and objective.

45. In evaluating its obligations, MECC has failed to accord Elwyn's interests the

same faithful consideration that it has given its own interests.

46.   Despite the fact that Elwyn has a reasonable expectation of coverage and that substantial premiums have been paid for this coverage, MECC has refused in bad faith to perform its obligations under the MECC Policy.

47.   Accordingly, Elwyn is entitled to special relief set forth in 42 Pa. C.S.A. § 8371.

WHEREFORE, plaintiff Elwyn respectfully requests that this Court:

(a)   award interest in an amount equal to the prime rate of interest plus 3%;

(b)   award punitive damages;

(c)   award court costs and attorney's fees; and

(d)   such other relief as the Court deems appropriate.

Respectfully submitted,

_____
Kevin J. Kotch
Obermayer Rebmann Maxwell & Hippel LLP
1617 John F. Kennedy Blvd, 19th Floor
One Penn Center
Philadelphia, PA 19103
(215) 981-5700

Attorney for Plaintiff
Elwyn

Dated: March 24, 2008

# Midwest Employers Casualty Company
300 Main Street
Cincinnati, OH 45202



Excess Insurance Policy
For Self-Insurer Of
Workers Compensation and Employers Liability



MIDWEST EMPLOYERS CASUALTY COMPANY

SPECIFIC EXCESS
WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY INDEMNITY POLICY

No. 1623-SO-PA

SCHEDULE

1. Insured:
   ELWYN, INC.

2. Mailing address: 111 ELWYN ROAD
                    ELWYN, PENNSYLVANIA   19036

3. Named states:
   PENNSYLVANIA

4. Excluded states: None

5. Policy period:
   (a)   From: November 1, 1993
   (b)   To:   November 1, 1994
   Both days at 12:01 A.M. standard time at the Insured's address shown in Item 2 of this Schedule

6. Retention:
   (a)   See Endorsement #  1
   (b)   See Endorsement #  1

7. Limit each accident:
   (a)   Policy Part One, Workers' Compensation: STATUTORY
   (b)   Policy Part Two, Employers Liability: $500,000

8. Limit each employee for disease:
   (a)   Policy Part One, Workers' Compensation: STATUTORY
   (b)   Policy Part Two, Employers Liability: $500,000

9. Premium:
   (a)   Payroll divided by $100 multiplied by: .49100
   (b)   Minimum: $183,126.00
   (c)   Deposit: $183,126.00

COPY

10. Classification of Operations:

| Code | Classification | Estimated Payroll |
|---|---|---|
| 0940 | RESIDENTIAL CARE FACILITY | $17,100,267 |
| 0941 | SOCIAL REHABILITATION FACILITY | $2,858,790 |
| 0964 | SHELTERED WORKSHOPS | $5,631,108 |
| 0965 | COLLEGES AND SCHOOLS | $11,706,383 |

Total Estimated Payroll: $37,296,548

11. Endorsement Serial Numbers:
   NO. 1  SO-35          NO. 2  SO-37
   NO. 3  IO-66

COPY

12. Service Company: NRM LOSS CONTROL
                     VALLEY FORGE, PENNSYLVANIA

Countersigned

_____
Licensed Resident Agent    Date

MIDWEST EMPLOYERS CASUALTY COMPANY

Authorized Representative

## SPECIFIC EXCESS ANNUAL RETENTION ENDORSEMENT (Page 1 of 2)

Schedule Item 6 shall read as follows:

6. Retention each accident or each employee for disease:

    (a) As respects loss comprised of medical and rehabilitation expenses:

        (i) The first $90,000 incurred during the first retention period

        (ii) The first $50,000 incurred during the second retention period

        (iii) The first $40,000 incurred during the third retention period

        (iv) The first $40,000 incurred during each other retention period

    (b) As respects loss comprised of periodic income benefits: The first $22,500 due during each retention period

    (c) $300,000, as respects loss:

        (i) comprised of liability imposed by law for damages

        (ii) comprised of lump sum benefits (including lump sum benefits payable in installments) rather than periodic income benefits

        (iii) for which you purchase an annuity or make other financial arrangement to discharge your liability for payment of periodic income benefits

        (iv) for which any governmental entity requires you to make a deposit to fund the payment of periodic income benefits

    (d) subject to a maximum retention of $300,000

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective
11-01-93
Named Insured
ELWYN, INC.

Policy No.
1623-SO-PA

Endorsement No.
1

MIDWEST EMPLOYERS CASUALTY COMPANY

Countersigned.

                                                        Secretary              President

---

Authorized Representative

## SPECIFIC EXCESS ANNUAL RETENTION ENDORSEMENT (Page 2 of 2)

As respects this endorsement:

(1) Claim expenses (listed in subparagraph 3 of the definition of loss) shall be included with the above described kind of loss to which they pertain.

(2) The term "retention period" shall mean consecutive twelve month periods of time commencing on the date the accident or disease exposure occurs and on each anniversary of that date.

(3) Each medical service shall be deemed to be incurred upon the date the medical service is furnished.

(4) Each rehabilitation expense shall be deemed to be "incurred" upon the date that your payment is due for the rehabilitative service provided.

(5) The kind of loss described in Item 6(a) or 6(b) shall not be subject to the policy's late reporting penalty. The kind of loss described in Item 6(c) shall be subject to the policy's late reporting penalty.

COPY

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective
11-01-93

Policy No.
1623-SO-PA

Endorsement No.
1

Named Insured
ELWYN, INC.

MIDWEST EMPLOYERS CASUALTY COMPANY

Countersigned.

Secretary                President

-------------------------------------------------
Authorized Representative

SO-35 (1-93)

PAID LOSS COVERAGE
(Must Be Used With Endorsement No. SO-35.)

I. Part One of the policy shall also provide indemnity for loss paid by you during the policy period in excess of the retention indicated below as a result of all accidents and disease exposures occuring during the policy period:

Your retention for this endorsement will be $2,047,336.

or

payroll divided by $100 multiplied by $5.49,

whichever is the larger amount.



II. Loss pertaining to this endorsement will be limited as respects each accident or disease to the amount paid by you during the policy period for the accident or disease pursuant to Schedule Item 6(a) and (b), as amended by Endorsement No. SO-35.

III. The most loss we will reimburse you for pertaining to this endorsement with respect to all accidents and disease exposures occurring during the policy period is $1,000,000.

IV. For purposes of this endorsement, the date of each check (which clears the financial institution) controls when the loss is paid by you.

V. Within 45 days after the end of the policy period, send us a report (in a form satisfactory to us) showing the amount of loss subject to this endorsement paid by you during the policy period.

VI. It is important for you to understand that this endorsement does not appply to loss paid during the policy period as a result of any accident or disease exposure occurring during any previous policy period.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective
11-01-93
Named Insured
ELWYN, INC.

Policy No.
1623-SO-PA

Endorsement No.
2

MIDWEST EMPLOYERS CASUALTY COMPANY

Countersigned.

Secretary     President

----------------------------------------
Authorized Representative

SO-37 (1-93)

## DEFINITION OF PAYROLL PERTAINING TO VOLUNTEER WORKERS

Payroll pertaining to volunteer workers (except volunteer firefighters and volunteer police officers) means the federal minimum hourly wage multiplied by the hours worked by the volunteers, unless the work performed by the volunteers is similar to work performed by a paid employee who is receiving more than the federal minimum hourly wage, in which event the wage reported for the volunteer worker will be the same as the wage reported for the paid employee.

$ N/A per year shall be included in payroll for each volunteer firefighter or volunteer police officer.

Duties performed by volunteer workers will be assigned to the classification which the duties would be assigned to if performed by regular employees.

No amount is included in payroll pertaining to any volunteer worker who is not covered under the workers compensation law because Part One of the policy does not apply with respect to that worker.



This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective  
11-01-93  
Named Insured  
ELWYN, INC.

Policy No.  
1623-SO-PA

Endorsement No.  
3

MIDWEST EMPLOYERS CASUALTY COMPANY

Countersigned.

Secretary                President

----------------------------------------------
Authorized Representative

IO-66 (1-93)

# MIDWEST EMPLOYERS CASUALTY COMPANY

## Specific Excess
## Workers' Compensation and Employers Liability Indemnity Policy

In return for the payment of the premium and subject to all terms of this policy, we agree with you as follows:

## GENERAL SECTION

A. <u>Self-Insurance</u>. Your acceptance of this policy indicates that you are now and will remain until the end of the policy period a duly qualified self-insurer in each state named in Schedule Item 3. If you are not a duly qualified self-insurer with respect to any loss covered by this policy, this policy will apply as if you were.

B. <u>Insured</u>. The Insured is named in Item 1 of the Schedule. If the Insured is a partnership or joint venture, each partner or member of the joint venture is insured only in the capacity as employer of employees of the partnership or joint venture.

C. <u>The Policy</u>. This policy includes the Schedule and any attached endorsements. It is a contract of insurance between you (the Insured named in Schedule Item 1) and us (the Insurer named on the Schedule). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be a part of this policy. Endorsements amending Schedule Items 1, 3, 4, 6, 7 or 8 apply with respect to accidents and disease exposures occurring at or after 12:01 A.M. on the endorsements' effective date.

D. <u>Policy Period</u> means the period of time covered by this policy as shown in Schedule Item 5. If this policy is cancelled, the policy period will end at 12:01 A.M. on the cancellation date.

E. <u>Workers' Compensation Law</u> includes occupational disease law. It does not include the provisions of any law that provides non-occupational disability benefits.

F. <u>State</u> means any state of the United States of America and the District of Columbia.

## PART ONE - WORKERS' COMPENSATION

A. <u>How This Part Applies</u>. Part One applies to loss paid by you because of liability imposed upon you by the workers' compensation law of any state named in Schedule Item 3. Part One also applies to loss paid by you because of liability imposed upon you by the workers' compensation law of any other state which is not shown in Schedule Item 4. LIABILITY MUST RESULT FROM BODILY INJURY BY ACCIDENT OR BODILY INJURY BY DISEASE SUSTAINED BY AN EMPLOYEE YOU NORMALLY EMPLOY IN A STATE NAMED IN SCHEDULE ITEM 3. Bodily injury includes resulting death.

Bodily injury by accident must occur during the policy period. A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period. Bodily injury by disease does not include disease that results directly from bodily injury by accident. <u>Bodily injury by disease includes cumulative trauma</u>.

B. <u>Your Retention</u>. You must retain loss as shown in Schedule Item 6. This retention applies to Part One loss and to Part Two loss together. IT IS IMPORTANT FOR YOU TO UNDERSTAND THAT YOUR RETENTION FOR DISEASE APPLIES SEPARATELY TO EACH EMPLOYEE. Naming more than one Insured in Schedule Item 1 does not increase your retention.

C. <u>Our Indemnity</u>. We will indemnify you for loss paid by you in excess of your retention. This indemnity may be reduced by a late reporting penalty.

D. <u>Our Limit</u>. The most loss we will reimburse you for with respect to each accident is shown in Schedule Item 7(a). The most loss we will reimburse you for with respect to each employee for disease is shown in Schedule Item 8(a). Naming more than one Insured in Schedule Item 1 does not increase our limit.

E. <u>Late Reporting Penalty</u>. As respects each accident or each employee for disease:
1. If you do not give us written notice within one year of when required by Part Three, our indemnity will be reduced by 15%.
2. If you do not give us written notice within three years of when required by Part Three, our indemnity will be reduced by 40%.

F. <u>Loss</u> means the amount actually paid by you for regular benefits provided under the workers' compensation law in effect upon the date the accident or disease exposure occurs. Loss includes:
1. The amount paid by you in settlement of claims for regular benefits under the workers' compensation law;
2. The amount paid by you in satisfaction of awards or judgments for regular benefits under the workers' compensation law;
3. Court costs, interest upon awards and judgments, and allocated investigation, adjustment and legal expenses pertaining to workers' compensation claims. This subparagraph 3 does not include:
   (i) salaries paid to your employees;
   (ii) service company fees;
   (iii) claims administrator fees.

G. <u>Exclusions</u>. Part One does not cover:
1. Loss insured by full coverage workers' compensation or employers liability insurance;
2. Loss payable under the workers' compensation law of any state which is not named in Schedule Item 3, if you are protected from the loss by any other insurance;
3. Any loss arising out of operations for which you have rejected any workers' compensation law;

-1-

MWF-200 (1-93)

4. Punitive or exemplary damages because of bodily injury sustained by any employee;
5. Punitive, exemplary or compensatory damages because of your conduct, or the conduct of anyone acting for you:
   (a) in the investigation, trial or settlement of any workers' compensation claim;
   (b) in failing to pay or delay in payment of any workers' compensation claim.
6. Any assessment made upon self-insurers, whether imposed by statute, regulation or otherwise.

H. <u>Payments You Must Make</u>. You are responsible (without reimbursement from us) for any payments in excess of the benefits regularly provided by the workers' compensation law including those required because:

1. Of your serious and willful misconduct;
2. You knowingly employ an employee in violation of law;
3. You fail to comply with a health or safety law or regulation;
4. You discharge, coerce or otherwise discriminate against any employee in violation of the workers' compensation law; or
5. You violate or fail to comply with any workers' compensation law.

I. <u>Other Insurance</u>. If, as respects any state named in Schedule Item 3, any other insurance exists protecting you against loss covered by this insurance, this insurance shall apply in excess of the other insurance.

J. <u>Recovery From Others</u>. We have your rights, and the rights of persons entitled to compensation benefits from you, to recover our loss from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them. The recovered loss will first be used to reduce our loss. Then we will pay the balance, if any, to you. Expenses of all proceedings to recover from anyone liable for injury covered by this policy will be allocated between you and us in the ratio represented by the allocation of any damages which have been recovered.

## PART TWO - EMPLOYERS LIABILITY

A. <u>How This Part Applies</u>. Part Two applies to loss paid by you for damages imposed upon you by the laws of any state shown in Schedule Item 3. Part Two also applies to loss paid by you for damages imposed upon you by the law of any other state which is not shown in Schedule Item 4. DAMAGES MUST RESULT FROM BODILY INJURY BY ACCIDENT OR BODILY INJURY BY DISEASE SUSTAINED BY AN EMPLOYEE YOU NORMALLY EMPLOY IN A STATE NAMED IN SCHEDULE ITEM 3. Bodily injury includes resulting death.

Bodily injury must arise out of and in the course of the injured employee's employment by you.

Bodily injury by accident must occur during the policy period. A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period. Bodily injury by disease does not include disease that results directly from bodily injury by accident. <u>Bodily injury by disease includes cumulative trauma</u>.

B. <u>Your Retention</u>. You must retain loss as shown in Schedule Item 6. This retention applies to Part One loss and to Part Two loss together. IT IS IMPORTANT FOR YOU TO UNDERSTAND THAT YOUR RETENTION FOR DISEASE APPLIES SEPARATELY TO EACH EMPLOYEE. Naming more than one Insured in Schedule Item 1 does not increase your retention.

C. <u>Our Indemnity</u>. We will indemnify you for loss paid by you in excess of your retention. This indemnity may be reduced by a late reporting penalty.

D. <u>Our Limit</u>. The most loss we will reimburse you for with respect to each accident is shown in Schedule Item 7(b). The most loss we will reimburse you for with respect to each employee for disease is shown in Schedule Item 8(b). Naming more than one Insured in Schedule Item 1 does not increase our limit.

E. <u>Late Reporting Penalty</u>. As respects each accident or each employee for disease:
1. If you do not give us written notice within one year of when required by Part Three, our indemnity will be reduced by 15%.
2. If you do not give us written notice within three years of when required by Part Three, our indemnity will be reduced by 40%.

F. <u>Loss</u> means the amount actually paid by you for damages imposed upon you by law. Loss includes:
1. The amount paid by you in settlement of claims for legal damages;
2. The amount paid by you in satisfaction of awards or judgments for damages;
3. Court costs, interest upon awards and judgments, and allocated investigation, adjustment and legal expenses pertaining to employers liability claims. This subparagraph 3 does not include:
   (i) salaries paid to your employees;
   (ii) service company fees;
   (iii) claims administrator fees.

G. <u>Damages</u> includes:
1. Damages for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee; and
2. Damages for care and loss of services; and
3. Damages for consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee; Provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and
4. Damages because of bodily injury to your employee that arise out of and in the course of employment, claimed against you in a capacity

H. <u>Exclusions</u>. Part Two does not cover:
1. Liability assumed under a contract;
2. Loss payable under the law of any state which is not named in Schedule Item 3, if you are protected from the loss by any other insurance;
3. Punitive or exemplary damages because of bodily injury sustained by any employee;
4. Punitive, exemplary or compensatory damages because of your conduct, or the conduct of anyone acting for you:
    (a) in the investigation, trial or settlement of any employers liability claim;
    (b) in failing to pay or delay in payment of any employers liability claim.
5. Bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;
6. Any obligation imposed by a workers' compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;
7. Bodily injury intentionally caused or aggravated by you. This exclusion does not apply to claim expenses (listed in subparagraph 3 of the definition of loss) related to the injury;
8. Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions;
9. Bodily injury occurring outside the United States of America. This exclusion does not apply to bodily injury to a citizen or resident of the state(s) listed in Item 3 who is temporarily working outside the United States for the Insured;
10. Damages arising out of operations for which you:
    (a) have violated or failed to comply with any workers' compensation law, or
    (b) have rejected any workers' compensation law.

I. <u>Other Insurance</u>.  If, as respects any state named in Schedule Item 3, any other insurance exists protecting you against loss covered by this insurance, this insurance shall apply in excess of the other insurance.

J. <u>Recovery From Others</u>.  We have your rights to recover our loss from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them. The recovered loss will first be used to reduce our loss. Then we will pay the balance, if any, to you. Expenses of all proceedings to recover from anyone liable for injury covered by this policy will be allocated between you and us in the ratio represented by the allocation of any damages which have been recovered.

## PART THREE - CLAIMS

A. <u>Your Claims Handling Duties</u>.  It is your responsibility to investigate, settle, defend and appeal any claim made against you. It is also your responsibility to investigate, settle, defend and appeal any suit brought or other proceeding instituted against you.

B. <u>Your Claims Reporting Duties</u>.  It is important for you to understand that "Written Notice" shall contain complete details of the injury, disease or death. Providing loss runs does not constitute notice.
   1. You must give us written notice as soon as you learn of any of the following events involving loss which exceeds (or might in the future exceed) 50% of your retention:
       (a) claim;
       (b) award;
       (c) verdict;
       (d) action;
       (e) suit;
       (f) proceeding;
       (g) judgment.
   2. You must give us immediate (within 30 days) written notice of any accident involving:
       (a) fatality;
       (b) spinal cord injury;
       (c) a permanent total disability as defined in the workers compensation law;
       (d) serious burn injury;
       (e) brain injury;
       (f) amputation of a major member.
   3. You must give us prompt written notice of any claim in which the injured employees disability exceeds 52 weeks, even if the claim is being contested by you;
   4. You must give us immediate (within 30 days) written notice of all occurrences involving two or more of your employees.

C. <u>Claims Information</u>.  You agree to send to us any claim information which we may request.

D. <u>Claims Participation By Us</u>.  At our own election and expense, we have the right and shall be given the opportunity to participate with you in the settlement, defense or appeal of any claim, suit or proceeding which might involve a loss to us. We have no duty to investigate, handle, settle or defend any claims, suits, or proceedings against you.

E. <u>Good Faith Settlements</u>.  You shall use diligence, prudence and good faith in the investigation, defense and settlement of all claims and shall not unreasonably refuse to settle any claim which, in the exercise of sound judgment, should be settled. You agree not to make any voluntary settlement involving loss to us without our written consent.

F. <u>Proof of Loss</u>.  When paid loss exceeds your retention, you must provide us with a payment register listing all payments made on the claim. We will reimburse you the amount you have paid in excess of your retention, within 30 days of receiving in a form acceptable to us, a complete and proper proof of loss.

MWE-200 (1-93)                                         -3-

G. **Commutation.** Beginning thirty-six (36) months after receipt of notice by us of a claim, we may then, or at any time after, submit the claim for commutation. If we so elect, the claim shall be submitted to an actuary or appraiser to be mutually appointed by us and you. Should we both fail to agree upon an actuary or appraiser, then each party shall select an actuary or appraiser who shall then select an independent actuary or appraiser who shall fix a lump sum amount. We may pay the lump sum amount, which shall constitute a full and final release of our liability for the claim. However, such lump sum payment shall not constitute a full and final release of our liability if, after the lump sum payment, any supplemental award is made increasing the amount of benefits payable to the Employee and his/her dependents. Any additional liability, at our election, may immediately be commuted via the process above and we may discharge such liability by payment of another lump sum.

H. **Claim Audit.** You will let us or our representative examine and audit claim files upon our request. These audits may be conducted during your regular business hours.

## PART FOUR - PREMIUM

A. **Deposit and Adjustment Premiums.** At the beginning of the policy period you must pay us the deposit premium shown in the Schedule. At the end of the policy period:

   1. You will owe us the amount by which the final premium is greater than the deposit premium; or
   2. We will owe you the amount by which the deposit premium is greater than the final premium.

B. **Payroll Report.** Within 45 days after the end of the policy period, send us a report showing the amount of payroll earned by your employees during the policy period. The report must show payroll separately for each classification identified in Schedule Item 10.

C. **Final Premium.** The final premium due us for the policy period will be computed as shown in Schedule Item 9(a). Unless this policy is cancelled, final premium will be at least the minimum premium shown in Schedule Item 9(b).

   If we cancel this policy, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

   If you cancel this policy, final premium will be more than pro rata; it will be based on the time this policy was in force, and increased by the customary short rate table and procedure. Final premium will not be less than the short rate portion of the minimum premium.

D. **Payroll** means the gross pay of your employees for the policy period plus other amounts and items received by your employees as part of their pay for the policy period. We will send you a payroll reporting form describing what is included in payroll.

E. **Records.** You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

F. **Audit.** You will let us or our representatives examine and audit all your payroll records. The audits may be conducted during your regular business hours.

## PART FIVE - CONDITIONS

A. **Agreement Upon Terms.** Your acceptance of this policy means that you agree with us upon the terms of this policy.

B. **Sole Representative.** The Insured first named in Schedule Item 1 will act on behalf of all Insureds to change this policy, accept loss payments, receive return premium and give or receive notice of cancellation.

C. **Bankruptcy or Insolvency.** Your bankruptcy or insolvency will not relieve us from the payment of any claim covered by this policy. After the retention shown on the Schedule has been paid, payments will be made by us as if you had not become bankrupt or insolvent but not in excess of the Insurers Limit of Indemnity. Payment will be made to the Trustee in Bankruptcy or as directed by an appropriate court.

D. **Transfer of Your Rights and Duties.** Your rights or duties under this policy may not be transferred without our written consent. This provision does not apply to duties transferred to a service company or a claims administrator.

E. **Service and Administration.** This Agreement contemplates the concurrent and continued existence of a separate service agreement between you and the Service Company named in Item 12 of the Schedule. You must notify us within 30 days should you decide to change the service company.

F. **Cancellation.** You may cancel this policy by giving us at least thirty (30) days advance notice by registered mail stating the cancellation date. We may cancel this policy by giving you at least thirty (30) days advance notice by registered mail stating the cancellation date. Our mailing of registered notice to your address shown in Schedule Item 2 will be sufficient proof that we cancelled this policy.

If you fail to pay premium, we may cancel with 10 days written notice to you.

We have executed this policy by printing below the facsimile signatures of our President and Secretary and by the actual signature of our authorized representative on the Schedule.

## MIDWEST EMPLOYERS CASUALTY COMPANY

Countersigned:

| Authorized Representative | *SIGNATURE* <br> Secretary | *SIGNATURE* <br> President |
|---|---|---|

MWE-200 (1-93)                                                                 -4-